ALLISON B. BARTLETT, *et al.*, v. THOS. B. BULLENE & CO.

NOTARY PUBLIC, *Limitation of Action Against; Statute Construed.* On September 18, 1878, B. & Co. brought their action against B. & W. for damages, alleging that B., as a notary public, on September 21, 1874, made a false and fraudulent certificate of acknowledgment to a mortgage, purporting to have been executed by T. and wife to B. & Co., to secure the payment of $300 and interest; that W. was the surety on the notarial bond, dated May 20, 1871; and further alleging that the falsity of the fraudulent certificate was not discovered until December, 1875. *Held,* That the cause of action accrued at the time of the making of the false certificate; and further, *held,* that the special statute of limitation; providing that "no suit shall be instituted against any such notary, or his securities, more than three years after the cause of action accrues," (§ 9, ch. 71, Comp. Laws 1879,) controls in the case, and that on the face of the petition, the cause of action is barred.

*Error from Wyandotte District Court.*

THE nature of the action, and the facts, sufficiently appear in the opinion. Trial at the April Term, 1879, of the district court, when *Thomas Bullene* and three others, partners as *Bullene, Moores & Emery*, as plaintiffs, recovered a judgment against *Allison B. Bartlett* and *Joseph C. Welsh*, as defendants, who bring the case to this court.

*Bartlett & Cree*, for plaintiffs in error:

The alleged cause of action was barred. The statute of limitation, which governs this case, is § 9, ch. 71, Gen. Stat. 1868.

If the action be treated as one for relief, on the ground of fraud, and the general rule laid down in the code be also considered applicable, the action is clearly barred, for more than two years elapsed after the discovery of the fraud before the action was commenced. (Civil Code, § 18, subdiv. 3, Gen. Stat. 1868.) We think it clear, however, that the limitation prescribed by the act respecting notaries public applies.

The vital question is, when did the statute commence to run against the alleged cause of action? We contend that it began to run from the date of the alleged malfeasance, and that there is no exception to its running. The other side claims that it commenced to run from the discovery of the alleged malfeasance, and that the plaintiffs below have three years from that time in which to sue. There can be no doubt that the cause of action accrued at the time the alleged malfeasance was perpetrated. (6 Cow. 238; 1 J. J. Marsh. 445; 4 Ohio, 331; 4 Rich. 39; 32 Miss. 233; 9 Cal. 423; 20 Johns. 43.)

Unless the rule laid down in § 18 of the code be considered applicable to the case, there is no statutory rule fixing the discovery of the fraud as the date of the commencement of the running of the statute of limitations. If the statute commenced to run in this case from the discovery of the fraud only, it must be in consequence of some general rule of law or equity. At equity, the statute commenced to run in cases

of fraud from its discovery, unless the party injured had the full means of discovery from the first, or was guilty of negligence in failing to discover it at the earliest moment. It was necessary for the party claiming the benefit of the exception allowed on account of fraud, to allege facts showing diligence on his part, and explaining the mode and time of discovery. (2 Curtis C. C. 202; 28 Miss. 432; 34 id. 451; 24 Tex. 345; 9 Pick. 244; 50 Mo. 445; 4 Rich. 39.)

At law, the decisions are not in harmony. Some courts refuse to recognize any exception to the running of the statute of limitation on the ground of fraud. (20 Johns. 33; 10 Ohio, 469.)

The rule laid down in another class of cases, however, allowed the exception of fraud where there had been a positive fraudulent concealment of the cause of action. (8 Allen, 130; 17 Gratt. 321; 58 Me. 437; 8 Foster, N. H., 26.)

Mere ignorance on the part of the person injured, or mere silence on the part of the one committing the fraud, is not sufficient to prevent the statute from running. (31 Ala. 115; 27 Ind. 429; 40 Iowa, 601.)

*J. B. Scroggs*, for defendants in error:

We submit that the cause of action set out in the petition of plaintiffs below occurred at the time of the discovery of the falsity of said certificate, to wit, December, 1875, and that the same rule of law governs the construction of the statute limiting actions on bonds of notaries public which obtains in the construction of any other statute of limitations — that the distinction between courts of law and courts of equity do not exist in the state of Kansas. (2 Kas. 390; 20 id. 107; 21 id. 404, 405.)

The plaintiffs below had the right to presume that the notary had done his duty in the premises as required, and they did not and could not have known of the falsity of said certificate until the rendition of the verdict of the jury in December, 1875, on the trial of the action brought to fore close the mortgage.

Counsel for plaintiffs in error claim that defendants in error were negligent in not discovering the falsity of said certificate prior to the verdict of the jury in the attempt to foreclose the mortgage. No portion of the evidence is brought up in the record, and the court is consequently unable to determine upon what evidence the jury based their finding, that Rose Teis did not sign and acknowledge the mortgage, nor any reason why defendants in error failed to discover the falsity of said certificate before that time; but by reference to the case-made, it will be seen that the mortgage *purported* to be signed and acknowledged by said Rose Teis, and consequently defendants had no means of knowing, and had no reason to suspect, that said signature was thereto written *without* her authority, or that the same was a forgery, until the jury so found from the evidence. The court is bound to presume, from all that is shown in this record, that the jury were justified by the evidence in so finding. (*Purporting* — see Webster's Unabr. Dict.)

It is claimed by plaintiffs in error that the averment of plaintiffs below, that "they had no means of knowing of the falsity of said certificate until the verdict of the jury below," is " a conclusion, and in the very nature of things cannot be true." This was a matter of proof, and from the pleadings, and the brief and argument of plaintiffs in error, was an issue in the case, and by the court below, from the evidence, found in favor of defendants in error; and the rule is too well settled in this court to require any citation of authorities, that this matter cannot be reviewed by this court, unless the evidence is embodied in the record.

The opinion of the court was delivered by

HORTON, C. J.: On September 18, 1878, the defendants in error (plaintiffs below) brought their action against the plaintiffs in error, (defendants below,) alleging that Allison B. Bartlett, as a notary public, made a fraudulent and false certificate of acknowledgment to a mortgage described in the petition; that Welsh, one of the plaintiffs in error, was surety

39 — 23 KAS.

on his notarial bond, and judgment was asked against both Bartlett and Welsh. The bond, which was made a part of the petition, was dated May 20, 1871, and was conditioned that: "If said A. B. Bartlett shall well and faithfully perform and discharge the duties of his said office [notary public in and for the county of Wyandotte] according to law, then this obligation shall be void and of no effect; otherwise, to remain in full force." The false and fraudulent certificate of acknowledgment was executed September 21, 1874. The petition also contains these allegations:

"Plaintiffs say that said pretended mortgage purported to convey the homestead of Rose Teis and her husband, Peter G. Teis, and was absolutely void without the signature and acknowledgment of said Rose Teis. Plaintiffs further say that at the April term of this court, 1875, they brought suit upon the said note and mortgage in the name of T. B. Bullene, one of the plaintiffs herein, against the said Peter G. Teis and Rose Teis, his wife, and that at the December term of said court, 1875, trial was had in said cause before a jury, and that the jury found that the said Rose Teis did not sign or acknowledge the said mortgage; whereupon judgment was rendered for said plaintiff, T. B. Bullene, and against said said Peter G. Teis and Rose Teis upon said promissory note, but that said plaintiff, T. B. Bullene, was denied a decree foreclosing the said mortgage and an order for the sale of said property to satisfy said judgment. Plaintiffs further say that prior to the verdict of the jury above stated, at the December term of said court, that they, nor either of them, had any knowledge of the falsity and fraudulency of the said notarial certificate to said mortgage, so made by the said A. B. Bartlett as said notary public as aforesaid; that prior to the rendition of said verdict by said jury in said last-mentioned action, they did not know, or have means of knowing, that said A. B. Bartlett, as said notary public as aforesaid, did not take the acknowledgment of said Rose Teis to the said mortgage, as he in his certificate certified that he did. And plaintiffs further allege that three years have not elapsed since the discovery of the falsity of said A. B. Bartlett's said certificate and the commencement of this suit.

"Plaintiffs further say, that thereupon they caused a general execution to issue upon said judgment, which execution was duly returned, indorsed, 'No goods or chattels, lands or

tenements found whereupon to levy,' by means whereof said judgment has become wholly valueless to said plaintiffs. Wherefore, plaintiffs aver that by reason of said wrongful acts and omissions of the said defendant, A. B. Bartlett, as aforesaid, the debt of plaintiffs intended to be secured by said mortgage has become entirely worthless to said plaintiffs, and that they have been damaged in the sum of $700, and that according to the statutes in such cases made and provided, an action has accrued to them."

The defendants, Bartlett and Welsh, filed their answer April 8, 1879, setting up a general denial and the statute of limitations of three years.   Trial had at the April term, 1879, of the district court by the court, a jury being waived. The defendants objected to the introduction of any evidence at the trial, on the ground that it appeared from the petition that the cause of action was barred by the statute of limitations, and that a cause of action was not stated.   The objection was overruled by the court, and final judgment was given for $472.45 and costs against defendants and in favor of plaintiffs below.

The vital question is, when did the cause of action alleged in the petition accrue?   Plaintiffs in error contend that the statute of limitations commenced to run from the date of the malfeasance, to wit, September 21, 1874, and that there is no exception to its running.   Defendants in error claim that the cause of action accrued at the time of the discovery of the falsity of the certificate by the mortgagee, to wit, in December, 1875.   While there is some little conflict in the decisions, the highest and most decisive authority favors the view that the malfeasance of a person, or the negligence or breach of duty of an officer, is the gist of the action, and not the injury consequent thereon, and that the statute therefore begins to run from the malfeasance, negligence or breach.   "In actions for official or professional negligence, the cause of action is founded on the breach of duty which actually injured the plaintiff, and not on the consequential damage.   .   .   .   So, in an action against the sheriff for an insufficient return upon a writ by reason whereof the judgment was reversed, the

statute begins to run from the time of the return, and not from the reversal of the judgment." (2 Greenl. Ev., § 433.)

In *Betts v. Norris*, 21 Me. 315, it was decided, in an action against an officer for neglect of duty in not attaching sufficient real estate, as it was his duty to have done, whereby the creditor who recovered judgment lost a part of his debt, that the statute commenced running from the time of the return of the officer upon the writ, and not from the time it was ascertained by the levy upon the property attached that it was not sufficient to satisfy the whole judgment. In *Cæsar v. Bradford*, 13 Mass. 169, the officer who served the original writ falsely returned that he had taken bail, when in fact he had not. The court held that the action accrued against him immediately. In *Kerns v. Schoonmaker*, 4 Ohio, 331, it appears that a judgment was obtained on April 25, 1825, before a justice of the peace, in favor of Jacob Kerns, against John Stewart, for $172.69. On the 28th of April, 1825, Stewart offered one Simon Elliot as surety for the stay of execution upon this judgment, who was accepted by the justice; but the entry upon his docket was so carelessly, negligently and informally made that Elliot was not legally bound. Stewart died insolvent, before the supposed stay of execution expired. In May, 1829, the recognizance was discovered altogether void, by the judgment of the supreme court. Within one year after said May term, 1829, Kerns brought his action against Schoonmaker, the justice, to recover damages for negligence and omission of duty. The court held that the action was barred by the statute of one year, on the ground that the action accrued before the termination of the suit in 1829. See also *Wilcox v. Plummer*, 4 Pet. 172; *Argall v. Bryant*, 1 Sandf. 98; *Fee v. Fee*, 10 Ohio, 469; *Lathrop v. Snellbaker*, 6 Ohio St. 276; *Ellis v. Kelso*, 18 B. Mon. 296; *Howell v. Young*, 5 B. & C. 259.

Applying the principle deducible from these decisions to the case at bar, we are of the opinion that the alleged cause of action accrued at the date of the making of the false certificate by the notary; and that, as the statute of limitations,

which controls, provides that "no suit shall be instituted against any such notary or his securities more than three years after the cause of action accrues," (Comp. Laws 1879, ch. 71, § 9,) the cause of action was barred by the statute, when brought on September 18th, 1878, more than three years having elapsed after the action accrued before the commencement thereof.

It is unnecessary to discuss the exception to the running of the statute prescribed in subdivision 3d, § 18, ch. 80 of the code, because, whether applicable or not in cases where a special statute of limitation is provided, more than two years expired after the discovery of the malfeasance of the notary before suit was brought. As the petition showed upon its face that the cause of action was barred by the statute of limitation, it did not state facts sufficient to constitute a cause of action, and the trial court erred in receiving evidence and rendering judgment over the objections of the defendants. (*Zane v. Zane*, 5 Kas. 134.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.