[No. 2987.   Decided December 8, 1898.]

FIRST NATIONAL BANK OF PULLMAN, *Appellant,* v. C. W. YOUNG *et al., Respondents.*

TROVER—ACTION AGAINST WAREHOUSEMAN.

A complaint against a public warehouseman for conversion of wheat states a cause of action when it alleges that the wheat was stored in defendant's warehouse and a receipt therefor issued to the owner, not in the form of a warehouse receipt, as prescribed by statute, but in the form of a memorandum slip with instructions to be returned for storage ticket, and notice not to buy the slip printed thereon; that the owner sold the wheat to another, who transferred same to plaintiff, together with the memorandum receipt, which passed by indorsement of the several transferees to plaintiff; that plaintiff presented the memorandum and demanded a regular warehouse receipt, and, upon the same being refused, demanded the wheat or the value thereof, tendering all storage and other legal charges due on the wheat.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Reversed.

*Fullerton & Ettinger,* and *Chadwick & Bryant,* for appellant:

The delivery of grain to warehousemen for storage does not, in this state, constitute a sale of the grain so delivered. But the warehouseman is bound to deliver the grain so received, or its equal quantity in like kind, to the depositor or his assigns, on demand and return of the receipts, if any are given, and payment of his reasonable charges, else he lays himself liable to damages for the conversion thereof. Bal. Code, §§ 3590-3605; *Hall v. Pillsbury,* 43 Minn. 33 (19 Am. St. Rep. 209, 7 L. R. A. 529); *Nelson v. Brown,* 53 Iowa, 555; *McBee v. Ceasar,* 15 Ore. 62; *Arthur v. Chicago, etc., Ry. Co.,* 61 Iowa, 648; *Young v. Miles,* 20 Wis. 615; *Howe v. Munson,* 65 Ill. App. 674.

22—20 WASH.

Trover will lie against a warehouseman for failure to deliver wheat received in store by him to the rightful owner, on demand of such owner. *German National Bank v. Meadowcroft,* 95 Ill. 125 (35 Am. Rep. 137); *Kimberly v. Patchin,* 19 N. Y. 330 (75 Am. Dec. 334); *Pleasants v. Pendleton,* 6 Rand. 473 (18 Am. Dec. 726); *Horr v. Barker,* 11 Cal. 393 (70 Am. Dec. 791); *Young v. Miles,* 20 Wis. 615; *Gardner v. Dutch,* 9 Mass. 427; *Walsh v. Adams,* 3 Denio, 125; *Nowlen v. Colt,* 6 Hill, 461 (41 Am. Dec. 756); *White v. Morton,* 22 Vt. 15 (52 Am. Dec. 75); *Doty v. Hawkins,* 6 N. H. 247 (25 Am. Dec. 459).

*J. W. Mathews,* and *Hanna & Hanna,* for respondents:

In making what is commonly known as the "warehouse law," the legislature intended it to apply where the warehousemen dealt with the public. It was not intended to apply to instances where a warehouseman, carrying on the business of storing grain in his warehouse for the public, placed his own grain in his own warehouse. *Bank of New York National Banking Ass'n v. American Dock & Trust Co.,* 38 N. E. 713.

The legislature has power to declare what services warehousemen shall render the public, but, until such power is exercised, warehousemen are at liberty to conduct their warehouses as they desire. *Delaware, L. & W. Ry. Co. v. Central Stockyards & Transit Co.,* 6 L. R. A. 855. As to the purpose and intent of the legislature in enacting warehouse laws, see *State v. Stockman,* 46 Pac. 851.

Under our law a statutory warehouse receipt does not make the warehouseman a guarantor of the title of the bailor to the thing bailed, and a transfer of a receipt, whose terms are in compliance with the requirements of our statute, only carries with it such title as the bailor had at the time of bailment. *Mechanics & T. Ins. Co. v. Kizer,*

103 U. S. 352 (26 L. ed. 433); *Yarwood v. Happy,* 18 Wash. 246; *Hale v. Milwaukee Dock Co.,* 29 Wis. 482 (9 Am. Rep. 603).

The warehouse act does not prohibit the party storing and the warehouseman from making any contract they agree upon as to the storage of the article, or concerning the article stored. As to what are, and what are not statutory warehouse receipts, see *Sinsheimer v. Whitely,* 43 Pac. 1109 (52 Am. St. Rep. 192); *Cathcart v. Snow,* 21 N. W. 94.

The opinion of the court was delivered by

DUNBAR, J.—The complaint alleged substantially the following pertinent facts: That between the 15th day of September, 1895, and the last day of January, 1896, the defendants were co-partners, doing business under the firm name and style of Young & Monlux, and were engaged in conducting and operating a grain warehouse for handling and storing grain, at Pullman, in Whitman county, Washington; that between said dates the defendant Ezra Monlux delivered at the said warehouse 41,650 pounds of No. 1 wheat, which said wheat was received for storing in said warehouse by said defendants; that the defendants gave to said Ezra Monlux, as evidence of the receipt of said wheat, certain memoranda. We insert one, which is substantially a copy of all:

"No. 123.                    Pullman, Sep. 28, 1895.

Received for account of owner as appears on stub, E. Monlux .................................. 6395.

No. Dry, 50 sacks.

Notice: Do not buy this slip. It must be returned for storage ticket.                    C. W. YOUNG."

No other or different receipt was given therefor. Some of these receipts were signed by one C. E. Durham, but it is alleged that Durham was authorized by the defendants to receive wheat at the warehouse and acknowledge the

same by written memoranda.  C. W. Young, who signed a number of the memoranda, is one of the defendants in the action.   It is further alleged that, after said wheat was received by defendants and stored in the warehouse, and on the 27th day of January, 1896, said defendant Monlux, for a valuable consideration, sold, assigned and transferred said wheat and the whole thereof to one W. M. Chambers and one H. W. Price, co-partners as Chambers, Price & Co., and as evidence thereof indorsed to said Chambers, Price & Co. the written memoranda thereof hereinbefore mentioned; that on the 29th day of September, 1896, the said Chambers, Price & Co., for a valuable consideration, sold, assigned and transferred said wheat, and the whole thereof, to the plaintiff, and as evidence thereof delivered to the plaintiff the written memoranda above mentioned, and that the plaintiff is now, and ever since said time has been, the lawful owner of said wheat; alleges the presentation of the memoranda, the demand upon the defendants for the issuance of a regular warehouse receipt, and, upon the same being refused, a demand for the wheat, or value thereof, and an offer to pay all storage then accrued on said wheat and all warehouse or other legal charges; failure of the defendants to deliver said wheat, or any part thereof, or, in lieu thereof, to pay the value of said wheat, or any part thereof, and a wrongful and unlawful conversion of said wheat to defendants' own use; alleges the market value of the wheat and damages for detention to the amount of the value; and demands judgment for the same.

To this complaint the defendants interposed a demurrer, for the reason that it did not state facts sufficient to constitute a cause of action.   This demurrer was sustained by the court, and judgment for costs entered in favor of defendants.  From the order sustaining the demurrer and entering judgment, plaintiff appeals to this court.

We think the court committed error in sustaining this demurrer. The respondents have filed a very ingenious brief in support of the action of the court, but the refinements and technicalities of pleadings which are attempted to be sustained by this argument, whatever force they may have had under the technical rules of pleading at the common law, have no place in the reform pleadings of the code, where a statement of the facts in a plain and concise manner is the essential requirement. The statute in relation to warehouse receipts of this kind (Bal Code, §§ 3591-3600, 1 Hill's Code, §§ 2400-2409) provides, it is true, for a certain description of receipt; but this description of receipt was not given by the defendants, and another one was given, which was, no doubt, intended to act as a memorandum for the issuance of the permanent receipt; and while it is true that this memorandum gives notice not to buy this slip, for the reason that it must be returned for storage ticket, the storage ticket is only the evidence of the storing of the wheat. There was no sale of the grain to the warehousemen for storage under the provisions of the act above referred to; and it was the duty of the warehousemen to deliver the grain which had been stored, on demand and return of receipts, and upon the payment, of course, of reasonable charges. The complaint alleges that the storage receipt was demanded and refused; so that, if an action were brought at all, it would have to be brought in the absence of such receipt. The warehousemen had no power to prevent the owner of the wheat from selling the same or disposing of it in any way he saw fit. They were bailees for hire, and their duty was to deliver the property to the owner, whoever he might be, after the rightful charges had been paid. If the theory of the respondents be correct, the true owners of this wheat would have no remedy against the warehousemen, and a sale of the property by the original depositor would work a for-

feiture to the bailee of the property stored, a conclusion which the law does not for a moment justify.

We think this is a simple case and, under the statutes, if the complaint showed less than it does,—if it simply alleged that the wheat was stored and that, after such storage, the wheat was sold to the plaintiff, that demand had been made for the same and return of the receipt proffered, together with the storage charges due, and that the plaintiff was the owner of the wheat,—we think the complaint would have been sufficient and would have met the requirements of the statute. If the defendants have any defense to this action, they must set it up by way of answer; otherwise, the judgment should go for the plaintiff.

Reversed.

SCOTT, C. J., and GORDON, J., concur.